STOULIG, Judge.
Plaintiffs, Elizabeth P. Moore, wife of/and Paul F. Moore, have appealed a summary judgment that partially rejects her claim against defendants, Kenneth Gor-min, P. Victor Bernard and Morris Wright, trustees of the Bauerlein, Inc. Pension Trust.
After more than 20 years with Bauerlein, Inc., a public relations firm, Mrs. Moore was discharged on August 1, 1973 because of a salary dispute. Immediately after her termination, she applied for her accrued benefits in the Bauerlein, Inc. Pension Trust, a plan in which she participated since its inception in 1962. Under its provisions her interest had fully vested. The method for liquidating her interest is set forth in the plan as follows:
“ARTICLE XI
SEVERANCE OF EMPLOYMENT OF PARTICIPANT
If the employment with the Employer of any participating employee shall be severed, either voluntarily or involuntarily * * * then such participating employee shall be entitled to receive a benefit equal to the greatest of (a) * * * or (b) * * * or (c) the sum of
(i) the cash value of any life insurance or annuity contracts on the life of such participating employee held by the Trustees, plus
(ii) the actuarially calculated value of that portion of the Auxiliary Investment Fund attributable to such participating employee * *
Defendants tendered to Mrs. Moore $13,-344.17 in full settlement of her interest. Of this amount, $3,316.03 was a refund of her contributions to the system and $10,028.14 was computed by the trustees to be the liquidated value of her interest derived from employer contributions to her account with the trust.
Plaintiff claims the employer contribution payout is $5,316.14 less than what is due because (1) the trustees failed to use her actual age in determining her participation and (2) they failed to give her credit for employer contributions made between November 15, 1972 and August 1, 1973, the date of her discharge.
Plaintiff concedes the reason the age discrepancy arises is that she has always represented to Bauerlein that she was five years younger than her actual age. When she was hired in 1952, she gave the year of *812 her birth as 1923, rather than 1918. Ten years later when the pension trust was inaugurated she did nothing to correct the earlier misinformation on her age. In fact she did not admit to her real age until three weeks after her termination.
The effect Mrs. Moore’s misstatement had in enrolling in the pension trust at an age five years younger than actual is that the cost of funding her individual account is less than it would have been had her true age been known. The pension trust utilizes life insurance contracts on the individual participant and an auxiliary investment fund to provide the benefits stipulated. All other things equal, the younger the insured the smaller the premium. This contributory plan is financed by employee contributions at a designated percentage of salary per month and by the employer’s furnishing “ * * * the balance of the funds needed and necessary to finance and administer the retirement plan.” Because Mrs. Moore lied about her age, counsel for plaintiff points out, Bauerlien’s cost to maintain her account with the pension fund was less than if she had stated her true age. Plaintiff would have us conclude the employer actually benefited from a harmless misstatement in that it retained the use of the funds it should have paid into the pension trust for many more years.
The trustees raised the affirmative defense of fraud to this claim and pointed out error created by fraud can vitiate the underlying obligation or contract.[1] We do not construe Mrs. Moore’s misstatement as a fraud because it is apparent from the undisputed facts she had no intent to gain some unjust advantage against either her employer or the pension trust by taking five years from her age. In fact she went on record with a 1923 birthdate long before the company even thought of a - pension plan.
Appellant contends a misrepresentation by the employee does not in itself deprive participation in a pension plan based on actual fact. Robinson v. Standard Oil Co. of Louisiana [2] is cited to support this proposition. In that case a widow was allowed to recover gratuitous death benefits that accrued under a company policy when her husband died. To qualify she had to prove she had been living with him at the time of death or was at least dependent upon him for 20 percent of her support. One month prior to his death the husband apparently signed a statement in which he said he was not living with his wife. While this was admissible as evidence to support the company’s contention of ineligibility, the court held the statement in itself did not support a denial of the widow’s claim under this policy in the absence of a written statement by the insured expressing an intent to exclude his wife.
The facts are not analogous to this case. In Robinson, the death benefit was a gratuity. In this case the pension trust was a contributory system under which the employer’s liability was to be determined in part by information furnished by the employee. The trustees were charged with administering a payment plan that utilized life insurance as a means of furnishing benefits. While it is true the employer contribution for Mrs. Moore was less under the misrepresented facts than it would have been had her real age been used, we think it would be a breach of trust for those charged with administering the plan to pay out funds it failed to collect because of Mrs. Moore’s deception. Plaintiff suggests the difference could be recouped from Bauerlein (not a party to this suit), because the employer should have paid it originally. We cannot at this late date burden an employer with furnishing a lump sum contribution to rectify a mistake originating with the employee. We conclude plaintiff’s rights at severance must be based on her representations as to age when she elected to participate in the trust.
*813 Plaintiff’s second complaint is that the trustees failed to tender the vested interest she had in employer contributions due to the trust for the period beginning November 15, 1972 (date of employer’s annual supplementary contribution) and ending August 1, 1973 (date of termination of employment). The trustees take the position that the employer remits payment to the trust on an annual basis, when the premiums for life insurance become due on the anniversary date of the plan, or November 15. It is pointed out the employer’s obligation is to furnish the deficit between the cost of funding and the employees’ contributions; however, its annual remittance to the trustees is an advance payment of the amount actuarily projected to be the cost of financing the pension in the coming year. Bauerlein’s remittance in November 1972 constituted its projected liability through November 1973. Her vested right to employer contributions was calculated to her termination date, according to Paragraph 5 of the trustees’ affidavit filed in support of their motion for summary judgment. We quote:
“On the most recent anniversary date of the Plan, November 15, 1973, the twelve participants in the Plan (two of whom have since left the Plan) had the following interests in the Auxiliary Fund:
NOVEMBER 15, 1973
jjí % ‡ ‡ >fc jfi
Participant ‘H’ 10,407.42 1
i}C :}£ ‡ ‡ ‡ Sfc
“[N] 1 Participant ‘H’ is Elizabeth P. Moore. Both Ms. Moore and Participant ‘K’ were terminated prior to November 15, 1973. They therefore had their Fund valuation made as of the date of their respective employment terminations.”
The employee contributions withheld from plaintiff’s salary between November 1972 and her date of termination would have been applied to her 1973-74 liability to the plan had she not left Bauerlein. Thus the trustees were only responsible for refunding what had been deducted from her salary and tendering $10,407.42 as her vested interest in the plan.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. C.C. arts. 1832, 1847.

. 180 So. 237 (La.App.1st Cir. 1938).